*In re* J.J. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Phyllis J., Respondent-Appellant).

Third District    No. 3—99—0910

Opinion filed October 13, 2000.

HOMER, J., dissenting.

Susan Johnson, of East Peoria, for appellant.

Edward Danner, State's Attorney, of Lewistown (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Jeff L. Neigel, of Sebo & Clark, of Canton, guardian *ad litem*.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Phyllis J. (respondent) appeals from an order of the Fulton County circuit court terminating her parental rights to J.J. and V.J. (the minors). She claims that the court erred in finding her unfit and terminating her parental rights. She also claims that the court committed several procedural errors at the adjudicatory and permanency review hearings and that her counsel was ineffective at those hearings. We reverse the order terminating her parental rights and dismiss her remaining claims for lack of jurisdiction.

## BACKGROUND

### I. Pretermination Proceedings

The State filed a juvenile petition requesting that the minors[1] be adjudged wards of the court due to allegations of abuse and neglect.

---

[1]The petition included a third minor, S.F., who is not involved in this appeal because she has reached majority.

The court conducted a shelter care hearing and gave temporary custody of the minors to the Illinois Department of Children and Family Services (DCFS). DCFS formulated a service plan for respondent with tasks including alcohol treatment. The State later filed a supplemental petition alleging six counts of abuse and neglect.

At an adjudicatory hearing on June 4, 1996, respondent admitted the allegations in two counts of the supplemental petition. According to those counts, respondent and her husband (the parents) endangered the minors by excessively using alcohol and engaging in physical altercations while under the influence of alcohol. The court accepted respondent's admissions and adjudged that the minors were abused and neglected. The remaining counts of the supplemental petition were dismissed.

At a dispositional hearing on July 18, 1996, the court noted that the parents had made significant progress with their housing and in acknowledging their alcohol problems. Nevertheless, the court found that the minors' best interests warranted a transfer of guardianship to DCFS. After announcing this finding, the court admonished the parents of their right "to appeal from the Dispositional Order that will be entered."

A permanency review hearing[2] was held on October 22, 1996. The court did not file its dispositional order (from the July 18 hearing) until October 23, 1996. According to that order: the parents were adjudged unfit to have custody of the minors due to excessive alcohol use; the minors were made wards of the court; and DCFS was named as their guardian with the right to place them in foster care. The parents were instructed to cooperate with DCFS and Catholic Social Services (CSS).

The next permanency review hearing was held on April 22, 1997. In preparation for the hearing, a CSS caseworker submitted a report containing recommendations for further handling of the case. The following colloquy occurred regarding the recommendations:

"BY MR. NEIGEL [Guardian *Ad Litem*]: Your Honor, I would concur in that recommendation. I think that, based on the report, the recommendations are appropriate.

I am pleased to see that there has been some meaningful progress in this case. It looks like the parents are doing pretty much everything we're asking them to, and I'm glad to see we're going in the right direction.

\* \* \*

---

[2]This hearing, and subsequent hearings, are referred to in the transcripts as status hearings, although they were clearly permanency review hearings.

BY MR. DAVIS [parents' attorney]: We would agree with the recommendations, Your Honor, and I just want to state to the Court that I'm very pleased with my clients. I feel that they have made substantial progress, and I would ask the Court to take note of that.

BY THE COURT: The Court would agree. When I received the report sometime last week, it came as a pleasant surprise. It's not always that we see, and particularly in these cases, that parents are making substantial progress.

And I think you both ought to be commended for taking the steps that you have to help yourself and also to help with your children. So you should be commended for that."

The next permanency review hearing was held on September 2, 1997. A CSS caseworker submitted another report in preparation for that hearing. According to the report, the parents had maintained an orderly home, cooperated in dealing with their finances, and were participating in an aftercare alcohol treatment program. They reported having abstained from alcohol for eight months. They were attending parenting classes through CSS, and their visits with the minors had been gradually increased. The caseworker recommended that the minors be returned home with close monitoring for six months. The court adopted this recommendation and entered an order giving the parents physical custody of the minors. Guardianship remained with DCFS.

The minors were taken from the home again in January of 1998, when a police officer reportedly found respondent intoxicated while supervising them. Subsequent permanency review hearings were held on March 3 and November 12, 1998. At both hearings, the parents were ordered to cooperate with DCFS and CSS or risk having their parental rights terminated.

## II. Termination Proceedings

The State filed a petition to terminate the parents' parental rights on March 19, 1999. The grounds asserted for terminating respondent's rights were: (1) failure, within nine months of the minors' adjudication of abuse and neglect, to make reasonable efforts to correct the conditions that caused them to be removed from her custody; (2) failure, within nine months of the minors' adjudication of abuse and neglect, to make reasonable progress toward their return to her custody; and (3) habitual drunkenness for at least one year immediately prior to the commencement of the unfitness proceeding. 750 ILCS 50/1(D)(m), (D)(k) (West 1998).

On May 13, 1999, the court held an initial hearing on the termination petition. The permanency goal for the minors, which had previ-

ously been "return home," was changed to "substitute care pending court determination on termination of parental rights." The parents later denied the allegations in the termination petition, and the case proceeded to a hearing on the issue of parental fitness.

The fitness hearing began on August 24, 1999. The State's first witness was Kelly Rockwell, a CSS caseworker. Although Rockwell was new to respondent's case, she had reviewed the file materials dating back to the minors' adjudication of abuse and neglect in 1996. Eight service plans had been written, the first of which was dated May 28, 1996. Each plan contained objectives such as participation in alcohol counseling, attendance at Alcoholics Anonymous (AA) meetings and parenting classes, achievement of financial stability, and maintenance of a clean and safe home.

On July 30, 1996, one of respondent's visits with the minors was canceled because she was intoxicated. Rockwell had no documentation of any subsequent visits being canceled due to respondent's intoxication. The overall ratings on the second and third service plans (dated October 2, 1996, and April 2, 1997) were unsatisfactory. However, the overall ratings on the fourth and fifth plans (dated August 13, 1997, and January 5, 1998) were satisfactory.

According to Rockwell, respondent subsequently quit participating in parenting classes. On January 31, 1998, a CSS employee saw her husband drunk at a gas station. The minors had returned home by that time, and the police were called to check on them. Rockwell testified that respondent was observed to be intoxicated while supervising the minors. They were consequently taken from the home again.

Rockwell further testified that respondent was discharged from an alcohol counseling program in February of 1998 for lack of participation. She did not attend her AA meetings because of transportation problems. CSS knew about the transportation problems but never assisted respondent in attending her meetings. The overall ratings on the next three service plans were unsatisfactory.

According to Rockwell, a CSS employee smelled alcohol on the parents' breath after a court hearing on May 13, 1999. Breathalyzer tests were consequently performed. Respondent's husband failed his test, but respondent passed hers with a reading of zero. Nevertheless, Rockwell testified that respondent admitted to drinking the night before the hearing. She also testified that respondent's biggest problem was ongoing alcohol consumption. When questioned about this conclusion, she cited the incident on May 13, 1999, and then stated: "[W]e have no proof that she [respondent] has quit drinking. We have no reason to believe that she has quit."

After a continuance, the fitness hearing resumed on September

23, 1999. The State's second witness was Terry Boughan, an addiction specialist at Community Mental Health Center (CMHC). Boughan testified that respondent was evaluated on August 21, 1996, and found to be alcohol dependent. She was placed in a comprehensive outpatient therapy program involving four sessions per week. She attended five sessions and then began missing her appointments. The workers at CMHC believed she was unable to abstain from alcohol in an outpatient setting. She was consequently discharged with a referral for residential treatment.

According to Boughan, respondent returned to CMHC on February 21, 1997, reporting that she had successfully completed an inpatient program at Riverside Robert Young Center. She was reassessed and placed in another outpatient program involving one session per week. Regarding this program, Boughan testified: "it would have been more in the nature of an after care type of less intensive treatment as she appeared to have made some good progress in the residential treatment." She participated in the outpatient program at CMHC through November of 1997. She did not return thereafter, informing Boughan that she was ill and had no transportation. Boughan believed she was credible and sincerely desired treatment. Her file was closed on February 18, 1998.

As its final witness, the State called respondent and asked a few questions about the parents' social security income. Respondent then testified on her own behalf. She said transportation was always a problem when she tried to keep her appointments. She did not have a car or a driver's license. The nearest AA meetings were 7 to 10 miles away, and no one in the group would give her a ride. She expressed these problems to her CSS caseworkers.

Respondent also testified that she had stopped drinking alcohol within the last three to four weeks. She said she was not drinking when the police came to her house on January 31, 1998. She paid all her bills and cleaned her house at least once a week. From October of 1998 to April of 1999, she knew her service plans required abstinence from alcohol and compliance with CMHC's recommendations. Nevertheless, she acknowledged drinking alcohol and missing her sessions at CMHC during that period.

The court found respondent unfit on all three grounds alleged in the State's termination petition. The court then conducted a best interests hearing on October 14, 1999, and concluded that the minors' best interests warranted terminating respondent's parental rights. She appeals from the ensuing termination order.

## ANALYSIS

### I. Findings of Unfitness

■ Since termination of parental rights is an extraordinarily serious matter, the State must first prove parental unfitness by clear and convincing evidence. *In re M.F.*, 304 Ill. App. 3d 236, 710 N.E.2d 519 (1999). Such a finding will not be reversed on appeal unless it is against the manifest weight of the evidence (*i.e.*, the opposite conclusion is clearly apparent). In re *C.M.*, 305 Ill. App. 3d 154, 711 N.E.2d 809 (1999). A trial court's decision regarding a parent's fitness, and an appellate court's review of that decision, should be based only on evidence properly admitted at the fitness hearing. *In re J.G.*, 298 Ill. App. 3d 617, 699 N.E.2d 167 (1998); *In re L.L.S.*, 218 Ill. App. 3d 444, 577 N.E.2d 1375 (1991).

At respondent's fitness hearing, the State requested that the court take judicial notice of the service plans. The judge advised that she possessed only one plan, and the State then called its first witness without any judicial notice being taken. Additionally, the State did not introduce any documentary evidence. Our review is consequently limited to the testimony offered at the fitness hearing.

■ Two of the grounds on which the court found respondent unfit are codified in section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1998)). According to that section, a finding of unfitness is proper when a parent has failed to make "reasonable efforts to correct the conditions that were the basis for the removal of the child" or "reasonable progress toward the return of the child to the parent." 750 ILCS 50/1(D)(m) (West 1998). On either ground, the court may only consider evidence of parental conduct occurring within the statutory period prescribed in section 1(D)(m). *In re D.L.*, 191 Ill. 2d 1, 727 N.E.2d 990 (2000); *In re E.B.*, 313 Ill. App. 3d 672 (2000). The statutory period applicable to respondent's case is "within 9 months after [the] adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m) (West 1998); see *E.B.*, 313 Ill. App. 3d 672. The period began when the court filed its dispositional order. *In re D.S.*, 313 Ill. App. 3d 1020 (2000) (noting that an adjudication of abuse or neglect is not complete until the dispositional order is filed).

Under these guidelines, the State bore the burden of proving by clear and convincing evidence that respondent failed to make the requisite reasonable efforts and progress between October 23, 1996, and July 23, 1997. We hold that the court contravened the manifest weight of the evidence in finding that the State carried its burden. Rockwell's testimony covering the relevant period addressed the service plan ratings with very little focus on respondent's specific acts.

However, the testimony did indicate that respondent had regained custody of the minors by January of 1998. The order returning custody to the parents was actually entered on September 2, 1997. Certainly the minors would not have been returned home without respondent previously making reasonable progress toward that goal and reasonable efforts to overcome her alcoholism.

Boughan's testimony confirmed that respondent made reasonable efforts during the relevant period. Respondent came to CMHC in February of 1997 having successfully completed an inpatient alcohol treatment program. Boughan testified that she "appeared to have made some good progress in the residential treatment." She was reevaluated and found to need only one outpatient session per week. She subsequently participated in an aftercare program at CMHC through November of 1997.

■ Thus, the testimony from the fitness hearing showed that respondent made the requisite reasonable efforts and progress. The judge's comments at the end of the fitness hearing support this conclusion. She stated:

"[I]t took some period of time, but the parents did, to their credit, involve themselves in the treatment program, and because of their efforts and because of the progress made *** [the minors] were returned sometime in August of '97.

* * *

*** [A]s I indicated, I think the parents expended considerable efforts and especially the mother by inpatient treatment, but I am looking at the time period after the removal in January of 98."

The judge then found respondent unfit, but she based the finding only on conduct occurring *after* the relevant period.

Based on these facts, we see no way in which the State could have established by clear and convincing evidence that respondent failed to make reasonable efforts and progress under section 1(D)(m). The court's contrary findings are thus against the manifest weight of the evidence.

■ The other ground on which the court found respondent unfit is codified in section 1(D)(k) of the Adoption Act (750 ILCS 50/1(D)(k) (West 1998)). According to that section, parental unfitness encompasses "[h]abitual drunkenness *** for at least one year immediately prior to the commencement of the unfitness proceeding." 750 ILCS 50/1(D)(k) (West 1998). An unfitness proceeding commences when the State files its petition for termination of parental rights. *In re Latifah P.*, 307 Ill. App. 3d 558, 718 N.E.2d 1043 (1999); *In re Grant M.*, 307 Ill. App. 3d 865, 719 N.E.2d 195 (1999). A finding of habitual drunkenness depends on a determination of whether the individual (1) had a

fixed habit of drinking to excess, and (2) used alcohol so frequently as to show an inability to control the need or craving for it. *In re D.M.*, 298 Ill. App. 3d 574, 699 N.E.2d 212 (1998).

■ Under these guidelines, the State bore the burden of proving by clear and convincing evidence that respondent was a habitual drunkard at least between March 19, 1998, and March 19, 1999. We again hold that the court contravened the manifest weight of the evidence in finding that the State carried its burden. At most, the evidence from the fitness hearing showed that respondent drank alcohol and failed to attend her treatment sessions during the relevant period. The State did not establish the required frequency and extent elements of a habitual drunkenness finding.

The evidence of respondent's drinking during the relevant period may raise a suspicion that she was a habitual drunkard at that time. Rockwell seems to have based part of her testimony on such a suspicion, stating: "[W]e have no proof that she [respondent] has quit drinking. We have no reason to believe that she has quit." Nevertheless, the State was required to prove its case by clear and convincing evidence, not mere suspicion. Such proof is especially important in light of respondent's successful treatment between the relevant period and her prior diagnosis of alcohol dependency. The State simply did not present evidence establishing that respondent's alcohol consumption during the relevant period rose to the level of habitual drunkenness. The court's contrary conclusion is thus against the manifest weight of the evidence.

Since the court's findings of unfitness were improper, we reverse the order terminating respondent's parental rights. She has raised additional claims of alleged errors committed during the termination proceedings. However, our reversal obviates the need to address those claims.

## II. Issues Regarding Adjudicatory and Permanency Review Hearings

■ Respondent also claims that the court erred in failing to (1) enter a written order at the adjudicatory hearing, and (2) make the required statutory findings at the permanency review hearings. She further claims that her counsel was ineffective for not insisting that the court follow these procedures. We have no jurisdiction to review these claims.

In a juvenile case, the adjudicatory order is generally not appealable because it is not a final order. *In re J.M.*, 151 Ill. App. 3d 1037, 503 N.E.2d 1167 (1987). Rather, claims pertaining to the adjudicatory hearing are appealable upon entry of the court's dispositional order,

which is final. *J.M.*, 151 Ill. App. 3d 1037, 503 N.E.2d 1167; *In re Smith*, 80 Ill. App. 3d 380, 399 N.E.2d 701 (1980). Claims pertaining to the permanency review hearings are immediately appealable from the permanency review orders. 705 ILCS 405/2—28(3) (West 1998); 155 Ill. 2d R. 304(b)(1). To vest an appellate court with jurisdiction, a party must file a notice of appeal within 30 days of the judgment from which appeal is sought. 155 Ill. 2d R. 303(a)(1); *In re C.S.*, 294 Ill. App. 3d 780, 691 N.E.2d 161 (1998) (in appeal from order terminating parental rights, court had no jurisdiction to address claims pertaining to adjudicatory and dispositional hearings). This standard encompasses ineffective assistance of counsel claims. See *In re S.D.*, 213 Ill. App. 3d 284, 571 N.E.2d 1162 (1991) (in appeal from order terminating parental rights, court would not address father's claim that his counsel was ineffective at adjudicatory hearing).

The dispositional order was filed on October 23, 1996, and the most recent permanency review order was filed on May 14, 1999. Nevertheless, respondent did not file her notice of appeal until November 12, 1999. Since the notice was untimely for her claims pertaining to the adjudicatory and permanency review hearings, we lack jurisdiction to address those claims. We also lack jurisdiction because, in the notice, she did not specify that she was appealing from the adjudicatory and permanency review orders. See *Citizens Against Regional Landfill v. Pollution Control Board*, 255 Ill. App. 3d 903, 627 N.E.2d 682 (1994).

## CONCLUSION

The judgment of the Fulton County circuit court terminating respondent's parental rights is reversed. That portion of the appeal pertaining to the adjudicatory and permanency review hearings is dismissed for lack of jurisdiction. The cause is remanded for further proceedings consistent with this opinion.

Reversed in part, dismissed in part, and remanded.

KOEHLER, J., concurs.

JUSTICE HOMER, dissenting:

I disagree with the majority's conclusion that the trial court's finding of unfitness was against the manifest weight of the evidence. Addiction counselor Terry Boughan testified at the termination hearing that respondent was diagnosed as alcohol dependent in 1996. According to Boughan, respondent was unable at that time to maintain abstinence in an outpatient setting but, rather, required the more intensive treatment of a residential treatment facility. Respondent's

service plans required that she abstain from alcohol entirely before she would be able to regain custody of her children.

Though respondent could not regain custody of her children without first overcoming her addiction to alcohol, substantial evidence was presented that she continued to drink. On January 31, 1998, officers form the Fulton County sheriff's department observed respondent intoxicated while supervising her children. A CSS caseworker smelled alcohol on respondent's breath on May 13, 1999, and respondent admitted to the caseworker that she had been drinking the night before. Respondent, herself, testified that she had not abstained from alcohol between October 1998 and April 1999 and had only quit drinking three or four weeks prior to the September 23, 1999, termination hearing. Respondent had stopped attending both AA meetings and addiction counseling by February 1998, though both were also required by her client service plan as a prerequisite to regaining custody of her children.

The trial judge, having heard the testimony and observed the demeanor of the witnesses, found clear and convincing evidence that defendant was a habitual drunkard for at least a year prior to March 19, 1999. Though the majority seems to suggest that the State was required to establish precisely how often and how much respondent drank, I find no support for such a standard in either section 1(D)(k) of the Adoption Act (750 ILCS 50/1(D)(k) (West 1998)) or the relevant case law. To the contrary, evidence of indulgence without intermission is not necessary to show habitual drunkenness, but rather it is sufficient to show that a person has demonstrated an inability to gain control over his or her habitual craving. *In re D.M.*, 298 Ill. App. 3d at 580, 699 N.E.2d at 217.

The refusal to abstain from alcohol consumption and to attend required treatment—even though such refusal would prevent respondent from regaining custody of her children—supports a finding that respondent used alcohol so frequently as to show an inability to control the need or craving for it (see *In re D.M.*, 298 Ill. App. 3d at 580, 699 N.E.2d at 216). I would not find the opposite conclusion clearly apparent. See *In re C.M.*, 305 Ill. App. 3d at 163, 711 N.E.2d at 815 (a trial court's finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent). Consequently, I must respectfully dissent.