2022 IL App (4th) 220125-U

NOS. 4-22-0125, 4-22-0126, 4-22-0127, 4-22-0128 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 11, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.H., H.S., T.M., and L.E., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Henry County |
| Petitioner-Appellee, | ) | Nos. 17JA1 |
| v. | ) | 17JA2 |
| Melissa E., | ) | 17JA3 |
| Respondent-Appellant). | ) | 18JA29 |
| | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, holding (1) it lacked jurisdiction to consider respondent's claims of error as to the adjudication-of-neglect proceedings, (2) the trial court did not err in finding respondent unfit, (3) the trial court did not err in finding the termination of respondent's parental rights to be in the minors' best interest, (4) termination of respondent's parental rights was not unconstitutional, and (5) Respondent did not receive ineffective assistance of counsel.

¶ 2        The State filed petitions for adjudication of wardship concerning four minor siblings: H.S. (born March 11, 2008); D.H. (born July 31, 2012); T.M. (born May 26, 2014); and L.E. (born August 23, 2018). The minors were adjudicated neglected and subsequently made wards of the court. Thereafter, the State filed a petition to terminate the parental rights of the minors'

mother, respondent Melissa S. a/k/a Melissa E. The trial court found respondent to be unfit and further found it was in the minors' best interests to terminate her parental rights. She appeals, claiming various errors were committed by the court and counsel.

¶ 3 In response, the State contends (1) this court lacks jurisdiction to consider some of respondent's claims on appeal, (2) some of respondent's claims are forfeited, and (3) the remaining claims were not error. We agree with the State and affirm.

¶ 4 I. BACKGROUND

¶ 5 On February 9, 2017, before L.E. was born, the State filed petitions for adjudication of wardship, alleging minors H.S., D.H., and T.M. were neglected when respondent left the minors in the care of her then paramour, Brian E., after she was arrested and taken into custody on weapon- and methamphetamine-related charges. Brian E., who is L.E.'s father, was considered an inappropriate caretaker due to his several prior indicated reports with the Department of Children and Family Services (DCFS), the requirement that he register pursuant to the Murderer and Violent Offender Against Youth Registration Act (730 ILCS 154/1 *et seq.* (West 2016)), and his barred status as an occupant in their Henry County Housing Authority residence. The minors' respective fathers, including Brian E., did not participate in the trial court proceedings and are not parties to this appeal.

¶ 6 The State amended the petitions relating to H.S., D.H., and T.M. twice, with the third amended petition filed on July 23, 2018. On August 27, 2018, four days after L.E.'s birth, the State filed a petition in her case. Each petition included the allegation that the minors' environment was injurious to his or her environment because respondent was imprisoned with the Department of Corrections, serving a six-year term.

¶ 7            Respondent admitted the minors were neglected due to her imprisonment. The trial court entered adjudicatory orders on July 25, 2018, as to the three older siblings, and on November 14, 2018, as to L.E. Also on November 14, 2018, the court entered dispositional orders as to all minors, finding respondent unable to parent and making the minors wards of the court.

¶ 8            On December 10, 2019, the State filed a motion to terminate respondent's parental rights to each minor. After withdrawing that petition, the State, on April 13, 2021, filed a new motion alleging respondent was an unfit parent as she failed to make reasonable progress toward the return of the minors to her care within three consecutive nine-month periods following the adjudication of neglect, namely November 15, 2018, to August 15, 2019, August 16, 2019, to May 16, 2020, and May 17, 2020, to February 17, 2021 (750 ILCS 50/1(D)(m)(ii) (West 2020)).

¶ 9            On December 14, 2021, the trial court held respondent's fitness hearing. The court considered the testimony of Emily Whitaker, the caseworker for Lutheran Social Services of Illinois (LSSI). Whitaker testified she was assigned the case in December 2020. At that time, respondent was incarcerated at Logan Correctional Center. She was released on January 29, 2021. Of the three nine-month periods at issue, respondent was incarcerated the entire time with the exception of 19 days at the conclusion of the third period, from January 29, 2021, to February 17, 2021.

¶ 10            Whitaker testified respondent's case-plan tasks were to engage in (1) mental health treatment, (2) substance abuse treatment, (3) domestic violence counseling, and (4) a parenting course. She acknowledged respondent completed a substance abuse program and a parenting class while incarcerated, completing them in February and March 2020, respectively. The completion of the parenting class was satisfactory to LSSI but the substance abuse program was not.

¶ 11 The State presented a certified copy of conviction for the crimes mentioned above entered against respondent in Henry County case No. 17-CF-32. The conviction resulted in a total prison sentence of six years.

¶ 12 Testifying first for the State and then in her own case, respondent testified she was arrested on January 27, 2017, and remained in the Henry County jail until February 21, 2017. She then went to prison on June 6, 2018.

¶ 13 Respondent admitted she has a drug addiction, but she testified she has been abstinent since November 2016. She explained the benefits she received from the parenting and substance abuse prison programs. She said she also engaged in monthly mental health counseling, which consisted of separate topics including trauma, grief and loss, and anger management. In her opinion, her participation in all of the prison programs will make her a better mother.

¶ 14 The trial court found respondent to be unfit. The court stated the State had proven by clear and convincing evidence the allegations that respondent was unfit due to her failure to make reasonable progress toward the return of the minors during all of the relevant time periods. The court said "reasonable efforts don't come into play in this" and "incarceration does not toll the time period." The court noted reasonable progress "has been made if the [c]ourt can objectively conclude that the parent's progress is sufficiently demonstrable and is of such quality that the child can be returned to the parent within the near future." Reiterating, the court also noted "progress alone is not enough. It has to be sufficient progress where we are very close to returning the child." Because respondent was in prison for all but 19 days of the three relevant nine-month time periods, she had "nowhere near enough time [for the court] to determine" whether she was able to "put into practice" anything she learned from her prison classes. On this basis, the court found respondent

had not made reasonable progress to justify the return of the minors to her care anytime in the near future.

¶ 15        On January 18, 2022, the trial court conducted a best-interest hearing.

¶ 16        Cheryl Swearingen testified she was the foster mother to H.S., D.H., and T.M. The minors have lived with her for "[t]wo or three years now" at her home in Kewanee that sits on five acres. She is biologically the minors' maternal great-aunt, but they call her "Grandma C." Her daughter, who lives across the street from her, is the foster parent to L.E. The siblings see each other and extended family often.

¶ 17        Swearingen said H.S. was in eighth grade, enjoying school, and doing well. She was involved in student council and the youth group at church. According to Swearingen, H.S. seems to feel comfortable, safe, and happy in her home.

¶ 18        D.H. was in third grade. He enjoys going to church and Sunday school and playing with the family's four dogs. He too seems comfortable, safe, and happy in the home.

¶ 19        T.M. was in kindergarten. She also enjoys going to Sunday school.

¶ 20        Swearingen said she was currently remodeling her home so that each child will have his or her own room. She has expressed her willingness to adopt the minors, and she said each of them have expressed their desire for that to occur. She said H.S. does not participate in visits with respondent, stating she did not want to do so. Although D.H. participates in visits, he is not excited to go. After visits with respondent, D.H. engages in negative behavior such as aggression, "want[ing] to lash out," and "act[ing] up at school." T.M. also participates in visits with respondent. Swearingen described T.M. as unusually "quiet" before the visits and "very clingy" for three to four days after.

¶ 21 Swearingen testified all of the minors' needs were being met in her home and under her care.

¶ 22 Amanda Murphy, L.E.'s foster parent, testified she lives with her husband, their five children, and L.E., who has been in their home since birth. L.E. attends preschool/daycare five days a week. She enjoys playing with toys and being outdoors. She sees her siblings nearly every day. According to Murphy, L.E. appears to be happy, be comfortable, and feel safe in the home. L.E. calls Murphy "mom" and Murphy's husband "dad."

¶ 23 Murphy testified she usually dropped the minors off for visits with respondent. In terms of how L.E. reacts to respondent, Murphy said L.E. "just treats [respondent] like anybody else." Murphy described L.E. as "a very loving little girl" but she did not notice any "special treatment" toward respondent.

¶ 24 Murphy said she and her husband are willing to adopt L.E.

¶ 25 Next, Whitaker testified she had visited the foster homes. In her opinion, both are appropriate and safe homes for the minors. The minors appear comfortable and happy in their homes. They each are bonded with their respective foster parents. At the monthly visits with respondent, which began in February 2021, after respondent's release from prison, Whitaker said, the minors do not appear to have a bond with respondent. H.S. does not attend at all, and the others tend to play and talk with each other rather than with respondent. They do not seem "super excited" to see respondent when the visits begin.

¶ 26 Whitaker clarified earlier testimony regarding the services respondent had completed. She said respondent completed "a substance abuse and parenting" program while incarcerated. She completed "an anger management" service before she was incarcerated. And she completed "a domestic violence [service] when she was released."

¶ 27 Vincent Lombardo, a parole agent, testified on respondent's behalf. He was assigned as respondent's agent. When respondent was initially released, they met monthly to ensure she was compliant with parole mandates. As she became more compliant, the meetings were reduced to every two months. Respondent expressed to Lombardo her desire to have her children returned to her care.

¶ 28 Respondent testified that, since June 11, 2021, she has resided in a leased three-bedroom home for $700 per month. She began her job in the storage department for Great Dane on March 8, 2021. Her net income is approximately $500 per week. Respondent said she spoke with a former live-in nanny who would be willing to watch the minors while respondent worked from 5 a.m. to 3:30 p.m. She said she was compliant with her parole conditions and has completed everything that was required for the return of the minors in this case. She has benefitted from all of her services and has "every means to provide for [her] children."

¶ 29 The trial court determined it was in the best interest of the minors to terminate respondent's parental rights. In particular, the court noted the need for permanence, stating, "[T]his case has gone on far too long." The court stated: "What is in the best interests of the children is to finally give them some permanency and allow them to remain in the home with the people that they consider parents and have considered parents for many years now." The court found the State had carried its burden of proving by a preponderance of the evidence that termination was in the minors' best interests.

¶ 30 This appeal followed.

¶ 31                                    II. ANALYSIS

¶ 32 On appeal, respondent argues (1) the trial court erred in allowing a nonappointed person to participate in the proceedings as guardian *ad litem*, (2) the substitution of counsel by the

guardian *ad litem* was deficient, (3) the adjudicatory and dispositional hearings were untimely, (4) the court erred in finding the minors neglected and making them wards of the court, (5) the court's finding respondent was unfit was error, (6) the court's best-interest finding was against the manifest weight of the evidence, (7) the termination of respondent's parental rights was unconstitutional, and (8) she received ineffective assistance of counsel.

¶ 33                             A. Neglect Proceedings

¶ 34          The first four claims of error enumerated above involve alleged errors occurring during the neglect proceedings. This court lacks jurisdiction over the neglect findings. The dispositional order on the challenged neglect finding was entered in November 2018. This was a final and appealable order. See *In re Leona W.*, 228 Ill. 2d 439, 456 (2008). To challenge those findings, a notice of appeal must have been filed within 30 days of the order's entry. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); R. 660(b) (eff. Oct. 1, 2001). The notice of appeal was filed February 16, 2022. Thus, we have no jurisdiction over any claimed error that occurred before November 2018, during the neglect proceedings. See *In re C.S. Jr.*, 294 Ill. App. 3d 780, 785-87 (1998).

¶ 35          Respondent argues denying relief "solely on [a] jurisdictional basis" would "deny her a remedy for a previous injustice" and, citing *Droen v. Wechsler*, 271 Ill. App. 3d 332, 336, (1995), argues "cases should be decided on their merits and not procedural technicalities." Jurisdiction is not a "procedural technicality." See Black's Law Dictionary (11th ed. 2019) (defining jurisdiction as "[a] court's power to decide a case or issue a decree").

¶ 36                             B. Unfitness Finding

¶ 37          Respondent asserts the trial court's finding she was an unfit parent was erroneously based solely on respondent's incarceration. We disagree.

¶ 38        In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.* We decline to review this case under a *de novo* standard of review, as respondent urges. She claims the trial court improperly shifted the burden of proof to her to prove she would not revert to "the issues she had previously." Because we find the court applied the appropriate standard when deciding whether she had made reasonable progress, we will review the issue under the manifest-weight standard.

¶ 39        The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)). Section 1(D)(m)(ii) states a parent will be considered an "unfit person" if she fails to "make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected."

¶ 40        "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the conditions which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17. Reasonable progress exists when the trial court can conclude it will be able to order the child returned to parental custody in the near future. *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). Time in prison

does not toll any nine-month period, as the statute contains no exception for incarcerated parents. *In re J.L.*, 236 Ill. 2d 329, 343 (2010).

¶ 41    In this case, the State alleged three relevant and consecutive time periods: November 15, 2018, to August 15, 2019, August 16, 2019, to May 16, 2020, and May 17, 2020, to February 17, 2021. Respondent was sentenced to prison on June 6, 2018, and was released on January 29, 2021. Thus, she was incarcerated throughout each of the nine-month periods with the exception of 19 days at the conclusion of the third nine-month period. Despite respondent's efforts to comply with her case plan by engaging in some services offered within the correctional facility, the trial court found it was not in a position to be able to return the minors to respondent's care during any of the relevant time periods. As such, the court found respondent failed to progress in any meaningful way so as to demonstrate her ability to adequately and safely care for and parent the minors to allow for reunification, which was the reason the minors were taken into care initially.

¶ 42    Given this evidence, the trial court could have reasonably concluded respondent's progress was not sufficiently demonstrable or of such a quality that the court would be able to return the children to her custody in the near future. See *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 51. Accordingly, the court's finding that respondent had not made reasonable and substantial progress within the meaning of section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)) was not against the manifest weight of the evidence.

¶ 43                    C. Best-Interest Finding

¶ 44    Respondent claims the trial court's finding it was in the minor's best interest to terminate her parental rights is against the manifest weight of the evidence.

¶ 45    Upon a finding of parental unfitness, the proceedings move to a best interest hearing. At the best-interest hearing, the trial court's focus shifts to the child's interest in securing "a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). When a best-interest decision must be made, the court shall consider factors listed in section 1-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-3(4.05) (West 2020)). These factors include the child's physical safety and welfare, the development of the child's identity, the child's background and ties, the child's sense of attachments including the sense of security, familiarity, and continuity of affection, the child's wishes and long-term goals, and the preferences of those available to care for the child. *Id.* A parent's wishes to continue the relationship with the child yields to the child's interests. *D.T.*, 212 Ill. 2d at 364.

¶ 46    The trial court may terminate parental rights only upon finding the State proved, by a preponderance of the evidence, the termination of those rights is in the child's best interest. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009). We will not disturb a best-interest determination unless it is against the manifest weight of the evidence. *Id.* A best-interest determination is against the manifest weight of the evidence only if it is clearly evident the State failed to carry its burden of proof or, in other words, if the finding is "unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 85.

¶ 47    Based on the evidence presented, we find the trial court's best-interest determination was not against the manifest weight of the evidence. Respondent argues the foster parents and the COVID-19 pandemic frustrated respondent's relationship with the minors. Visits in prison were restricted and seemingly discouraged by case participants. Respondent claims because of these hurdles, she was unable to demonstrate a bond with the minors. We disagree.

¶ 48 A trial court must consider "the child's need for permanence *which includes the child's need for stability* and continuity of relationships with parent figures and with siblings and other relatives." (Emphasis added.) 705 ILCS 405/1-3(4.05)(g) (West 2020). The evidence demonstrated the older minors had been in care for five years, with L.E. in care for the entirety of her three-and-a-half years. Each had established a stable life with their foster families. They deserved permanence in a happy, healthy, and loving environment. The record shows, during those five years, respondent had very limited contact with the minors and was a destabilizing presence in their life. In further explanation of its decision, the court stated the following:

"The evidence shows that the foster homes that they are placed in, which are relatives and which are right across the street from each other, that their safety is provided for, adequate food, shelter, health, and clothing. They've become very attached to their foster parents, which is not surprising. And it doesn't take somebody trying to manipulate young children to form those attachments when they spend years with someone filling the role of a parent. They become attached to them, especially when that's the only parent that you really know, like [L.E.]"

¶ 49 The court's decision it was in the minors' best interest to terminate respondent's parental rights was not unreasonable, arbitrary, or contrary to the manifest weight of the evidence.

¶ 50 D. Constitutionality of Termination of Parental Rights

¶ 51 Respondent argues the termination of her parental rights was not narrowly tailored to protecting the minors' welfare, and thus unconstitutional as applied to her. We note respondent also states, "A facial constitutional challenge may be made at any time." Respondent is correct. However, as her challenge is based upon the specific facts and circumstances of her case in arguing the termination of her parental rights is unconstitutional, her challenge is an as-applied challenge.

- 12 -

See *People v. Thompson*, 2015 IL 118151, ¶ 36 ("An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party.").

¶ 52    First though, we address respondent's forfeiture of this claim. She acknowledges she forfeited this argument on appeal because she did not raise it before the trial court. However, she contends we should consider her argument either under the plain-error doctrine (see Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)) or as a result of an ineffective-assistance-of-counsel claim, which will be discussed below.

¶ 53    In criminal cases, forfeited claims may be reviewed under the plain-error doctrine "where a clear and obvious error occurred" and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. The plain-error doctrine can be applied in abuse and neglect cases. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). "The first step of plain-error review is to determine whether error occurred," and "[t]he burden of persuasion rests with the defendant." *People v. Curry*, 2013 IL App (4th) 120724, ¶ 62.

¶ 54    The Supreme Court has long held "a parent's right to control the upbringing of his or her children is a fundamental constitutional right." *In re R.C.*, 195 Ill. 2d 291, 303 (2001) (citing *Troxel v. Granville*, 530 U.S. 57, 77 (2000) (plurality opinion)). Under a strict scrutiny analysis, the reviewing court determines whether "the measures employed by the legislature [are] necessary to serve a compelling state interest, and [are] narrowly tailored thereto, *i.e.*, the legislature must use the least restrictive means consistent with the attainment of its goal." *In re D.W.*, 214 Ill. 2d

- 13 -

289, 310 (2005). Respondent does not dispute that the State has a compelling interest in protecting the welfare of children in general. *R.C.*, 195 Ill. 2d at 305.

¶ 55    Respondent contends, "The Juvenile Court Act provides a one-size-fits-all remedy of termination of parental rights." She argues, in her case, there is a less-restrictive alternative available to serve the State's interest. She claims: "Therefore, the court's overbroad termination of the mother's rights violated her constitutional rights and should be reversed." She claims she should be able to have some contact with the minors and not be "a legal stranger." Any other result, she claims, violates her constitutional rights.

¶ 56    Respondent cites no authority to support her claim that termination of her parental rights is unconstitutional. Further, she does not identify a "less-restrictive alternative" that would satisfy any claimed unconstitutionality. Without legal support or authority to the contrary, we find no constitutional violation and thus, no error. Without a clear and obvious error, there can be no plain error. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 57    "It is well established that an appellant's failure to raise an issue in the circuit court results in [forfeiture] of that issue." *In re Shauntae P.*, 2012 IL App (1st) 112280, ¶ 93. Accordingly, we find respondent has forfeited this issue by not raising it in the trial court proceedings. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 50; *In re Jaber W.*, 344 Ill. App. 3d 250, 256 (2003).

¶ 58                    E. Ineffective Assistance of Counsel

¶ 59    Under section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2020)), minors and their parents in juvenile proceedings have the right to effective assistance of counsel. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 12. Even though this right is statutory rather than constitutional, Illinois courts gauge the effectiveness of counsel in juvenile proceedings by

applying the constitutional standard from criminal law, specifically, the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re Ch. W.*, 399 Ill. App. 3d 825, 828 (2010). Under *Strickland*, a party alleging ineffective assistance must prove two propositions: (1) "counsel's representation fell below an objective standard of reasonableness" (*Strickland*, 466 U.S. at 669) and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id.* at 694). "A defendant must satisfy both prongs of the *Strickland* test." *People v. Evans*, 186 Ill. 2d 83, 94 (1999). "However, if the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *Id.*

¶ 60 When, as in this case, the trial court never addressed the claim of ineffective assistance, we decide *de novo* whether the respondent has proved less than reasonable representation and resulting prejudice. See *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24.

¶ 61 Respondent claims ineffective assistance of counsel of multiple grounds, which we will discuss in turn.

¶ 62 1. *Adjudicatory Proceedings*

¶ 63 Respondent argues counsel was ineffective for failing to address the early issues in the case. Specifically, respondent argues counsel (1) failed to object to the presence of an attorney who had not been appointed as guardian *ad litem*, (2) failed to object to an improper substitution of counsel for the guardian *ad litem*, (3) allowed respondent to stipulate to the neglect finding, (4) failed to challenge the timeliness of the neglect proceedings, and (5) failed to file a notice of appeal raising these issues from the adjudicatory proceedings.

- 15 -

¶ 64        As discussed above, we lack jurisdiction over arguments pertaining to alleged errors in the adjudicatory process. "Even where a respondent alleges that she received ineffective assistance of counsel during the adjudicatory phase of the proceedings, we categorically lack jurisdiction to entertain such an argument in an appeal from an order terminating parental rights." *In re Ja. P.*, 2021 IL App (2d) 210257, ¶ 24.

¶ 65        Further, Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) mandates a notice of appeal "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." This court acquires jurisdiction over the judgments specified in the notice of appeal and lacks jurisdiction over any matter or judgment not so specified. *Diocese of Quincy v. Episcopal Church*, 2014 IL App (4th) 130901, ¶ 35. Here, respondent specified in her notice of appeal only the order entered January 18, 2022, which was the order terminating her parental rights. Respondent did not assert error regarding the now challenged adjudicatory order or any decision within the neglect proceedings. We categorically lack jurisdiction to consider whether trial counsel was ineffective for failing to file a notice of appeal to an adjudicatory order in an appeal from an order terminating parental rights. See, *e.g.*, *In re J.J.*, 316 Ill. App. 3d 817, 825-26 (2000); *In re S.D.*, 213 Ill. App. 3d 284, 289 (1991).

¶ 66                            2. *Constitutional Claim*

¶ 67        Finally, respondent argues counsel was ineffective for failing to raise her claim the termination of her parental rights was unconstitutional. As discussed above, this claim was without merit. Therefore, respondent was not prejudiced by trial counsel's failure to preserve a meritless claim. *Evans*, 186 Ill. 2d at 94.

¶ 68                            III. CONCLUSION

¶ 69        For the reasons stated, we affirm the trial court's judgment.

¶ 70            Affirmed.