FOURTH DIVISION

  September 30, 1999

  nunc pro tunc
 to

  July 30, 1999

Nos. 1-97-4154 and 1-97-4239

(Consolidated)

IN THE INTEREST OF GRANT M., a Minor,) Appeal from the

       ) Circuit Court of

Respondent-Appellant.  ) Cook County.

_____________________________________)

    )

(THE PEOPLE OF THE STATE OF ILLINOIS,)

  ) No. 91 J 18055

Petitioner-Appellant,  )

v.  )

  )

ARTHUR M.,  ) The Honorable

  ) Wayne Meyer,

Respondent-Appellee.)  ) Judge, Presiding.

_________________________________________________________________

JUSTICE HOURIHANE delivered the opinion of the court: 

This is an appeal from an order of the circuit court which found Arthur M. was not an unfit parent and which dismissed the State's petition for appointment of a guardian with authority to consent to the adoption of Arthur's minor son, Grant M.

We reverse and remand for further proceedings.

BACKGROUND

Grant was born on November 29, 1988, to Arthur M. and Cecilia W.  He was born with drugs in his system.  A finding of neglect was entered on November 19, 1991, and a month later Grant was adjudicated a ward of the court.

On January 25, 1996, the State filed a supplemental petition for appointment of a guardian with the right to consent to adoption.  Cecilia consented to Grant's adoption.  Arthur initially agreed, but later withdrew his consent.  Thus, hearing proceeded on the State's supplemental petition.

The State alleged that Arthur was unfit in that he failed to maintain a reasonable degree of interest, concern, or responsibility as to Grant's welfare (750 ILCS 50/1(D)(b) (West 1994)); that he had been addicted to drugs for at least one year immediately prior to the commencement of the unfitness proceeding (750 ILCS 50/1(D)(k) (West 1994)); that he failed to make reasonable efforts to correct the conditions which were the basis for removal of Grant and/or failed to make reasonable progress toward the return of Grant, within 12 months after the adjudication of neglect (750 ILCS 50/1(D)(m) (West 1994)); and that he evidenced his intent to forgo his parental rights by failing, for a period of 12 months, to visit Grant, to communicate with Grant or the agency, and/or to maintain contact with or plan for Grant's future (750 ILCS 50/1(D)(n) (West 1994)).

The evidence presented at the unfitness hearing is largely undisputed.  Grant had lived with Arthur and Cecilia until the age of two.  At that time, Cecilia left Grant with her mother, Rosie Jones, who had been helping raise the child since birth.  Grant, who was almost 9 years old at the time of the hearing, has lived continuously with his grandmother.

Until Rosie began receiving public aid, the financial burden of raising Grant fell to her.  Although Rosie asked Arthur for financial help, he provided none.  There was evidence that, at one point, Cecilia and Arthur were living on the public aid money intended for Grant and his sister Jean W., who was also being raised by Rosie. 

During the period 1991 through 1995, Arthur's visitation with his son was sporadic, at best.  He visited perhaps four to seven times per year, and there were periods of six to eight months where he made no visits.  Even during the few weeks that Arthur lived in the same house with Rosie and Grant, he failed to interact with his son.  It was not until approximately 1996 or later that Arthur began visiting Grant more regularly, taking him to Sunday church services and to dinner.

Other than a coat Arthur bought Grant for Christmas in 1996, Rosie could recall no other presents.  However, Arthur maintained he had given his son a few small toys over the years.  Although invited, Arthur attended no birthday parties for Grant; he was uninvolved in Grant's schoolwork; and he never prepared a meal at Rosie's home.

The social service agency handling Grant's case had no contact with Arthur, his whereabouts unknown, until January 1996

when he telephoned the case worker.  The only reason he offered for not making contact sooner was that no one told him the agency was overseeing Grant's welfare.  

At the time of the hearing, Arthur was 42 years old.  The evidence documents a lengthy history of drug abuse, beginning in his late teens, involving cocaine, cannabis, methadone and heroin.  Arthur supported his addiction by dealing drugs and stealing, and admitted to two drug-related convictions.  In May 1996, he completed an outpatient drug treatment program, and there was evidence that he has remained drug-free.  He has also attended various counseling programs, including AA, and in July 1997, he completed a parenting class.

Arthur's residence at the time of trial was a halfway house.  He was employed full-time at a youth center as a program aide.  Although earning approximately $15,000 per year, he has provided no financial support for Grant. 

The trial court ruled that the State had failed to meet its burden of proving Arthur unfit and dismissed the State's petition.  The State's motion to reconsider, in which the Public Guardian joined, was denied.  The State and the Public Guardian separately appealed.  These appeals have been consolidated for review.

ANALYSIS

In a proceeding to terminate parental rights, the State must prove by clear and convincing evidence that the nonconsenting parent is "unfit", as defined under section 1(D) of the Adoption Act (750 ILCS 50/1 
et seq.
 (West 1994)).  705 ILCS 405/2-29(2) (West 1994); 
In re L.N.
, 278 Ill. App. 3d 46, 49, 662 N.E.2d 152 (1996).  A finding of unfitness may be based on evidence sufficient to support any one statutory ground, even if the evidence is insufficient to support other grounds alleged.  
In re C.R.
, 221 Ill. App. 3d 373, 378, 581 N.E.2d 1202 (1991).

Because the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of the reviewing court's, a trial court's finding of unfitness, or its finding that the State failed to meet its burden to prove unfitness, is accorded great deference and will only be reversed on review if it is against the manifest weight of the evidence.  
In re A.S.B.
, 293 Ill. App. 3d 836, 843, 688 N.E.2d 1215 (1997); 
In re Adoption of A.S.V.
, 268 Ill. App. 3d 549, 557, 644 N.E.2d 500 (1994); 
C.R.
, 221 Ill. App. 3d at 379.  A decision is against the manifest weight of the evidence where the opposite result is clearly the
 proper result.  
In re T.B.
, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893 (1991).

The State first alleged that Arthur was unfit in that he failed to maintain a reasonable degree of interest, concern, or responsibility as to Grant's welfare.  750 ILCS 50/1(D)(b) (West 1994).  
In determining whether a parent has shown reasonable interest, concern, or responsibility, courts will consider a parent's efforts to visit and maintain contact with the child (
In re Adoption of Syck
, 138 Ill. 2d 255, 278-79, 562 N.E.2d 174 (1990)), as well as other indicia of interest, such as inquiries into the child's welfare (see, 
e.g
., 
In re T.D.
, 268 Ill. App. 3d 239, 247, 643 N.E.2d 1315 (1994)).  The parent's conduct must be considered in the context of the circumstances in which it occurs, including
 any difficulty in obtaining transportation to the child's residence, the parent's poverty, conduct of others that hinders visitation, and the motivation underlying the failure to visit.  Where personal visits are impractical, we must consider whether a reasonable degree of concern was demonstrated through letters, telephone calls, and gifts to the child, taking into account their frequency and nature.  We must examine the parent's efforts to communicate with and show interest in the child, not the success of such efforts.  
Syck
, 138 Ill. 2d at 278-79.

In this case, the evidence is undisputed that, during the first five years Grant was in foster care with Rosie
, Arthur demonstrated an almost total lack of interest, concern, or responsibility as to Grant's welfare.  Arthur's visits were few; gifts were negligible; and there was no evidence of letters, cards, or telephone calls.  Indeed, the trial court stated that there is no question that Arthur was "totally unfit" during this period.  Nonetheless, the trial court weighed heavily Arthur's conduct during the year or so immediately preceding the hearing and determined that the State had failed to meet its burden of proof.  We disagree.

We are guided by this court's decision in 
In re Davonte L.
, 298 Ill. App. 3d 905 (1998), 
pet. for leave to appeal allowed
, 
D.L. v. Tawanda R.
, 181 Ill. 2d 571 (1998).  There, the trial court found the mother was not unfit where, following an approximate three-year period of drug and alcohol abuse and neglect of her son, the mother finally made efforts to turn her life around.  At the time of the hearing, there was a two-year period of sobriety and more regular visitation.  Although intimating that the mother was previously unfit, the trial court noted that the long delay in the case coming to court worked to the mother's benefit by providing her time to do what was required.  Thus, the trial court would not find the mother unfit.   On appeal, this court reversed, finding that a parent may not circumvent his own unfitness because of a bureaucratic backlog and delay in bringing the case to trial.  
Davonte L.
, 298 Ill. App. 3d at 922.  We cited with approval the second district case of 
In re Adoption of D.A.
, 222 Ill. App. 3d 73, 583 N.E.2d 612 (1991).  
D.A.
 held that "in cases involving lengthy periods of objectionable conduct ***, departure from the objectionable conduct does not eliminate the existence of grounds for determination that a parent is unfit.  Instead, it is a factor that may be considered during the second phase of the bifurcated trial in determining whether allowing the adoption petition and terminating the parental rights of one parent would be in the best interests of the children."  
D.A.
, 222 Ill. App. 3d at 79-

80.  

Here, the trial court acknowledged that there is a backlog in the courts, that there is understaffing, and that the State waited four years to file its supplemental petition.  The court also stated that Arthur took advantage of the long length of time between the filing of the petition and the actual hearing and "because of that, he wins and the State loses."   However, these circumstances, like those in 
Davonte L.
 and 
D.A.
, 
do not permit Arthur to circumvent his unfitness.

Even if the trial court gave appropriate weight to Arthur's recent efforts and properly found that the State had not met its burden of proving that Arthur has not shown reasonable interest, concern, or responsibility as to Grant's welfare, the court erred in concluding that the State failed to meet its burden as to the other statutory bases for unfitness on which the State relied.

The State alleged that Arthur was also unfit in that he was addicted to drugs for at least one year immediately prior to the commencement of the unfitness proceeding.  750 ILCS 50/1(D)(k) (West 1994).  Although the hearing did not go forward until October 1997, proceedings commenced on January 25, 1996 with the filing of the State's supplemental petition to terminate parental rights.  The record is replete with evidence of Arthur's drug addiction for several years prior to January 1996 and the State thus met its burden of proof.  The fact that Arthur completed a drug treatment program subsequent to the filing of the State's petition does not make this ground for unfitness inapplicable.   

The State also met its burden of proving Arthur unfit where he failed to make reasonable efforts to correct the conditions which were the basis for the removal of Grant, and failed to make reasonable progress toward the return of Grant, within 12 months after the adjudication of neglect.  750 ILCS 50/1(D)(m) (West 1994).  Again, the evidence is undisputed that during the year following the November 19, 1991 finding of neglect, Arthur made no effort to correct conditions, and made no progress toward the return of Grant. 

We recognize that there is disagreement among the appellate districts as to whether a court may consider the parent's conduct only as to the 12-month period immediately following the adjudication of neglect, or if it may consider the parent's conduct during the entire post-adjudication period.  See 
Davonte L.
, 298 Ill. App. 3d at 923-24 and cases cited therein.   We believe the statutory language is plain and unambiguous that it is the parent's efforts "within 12 months after an adjudication of neglected minor" (750 ILCS 50/1 (West 1994)) that is determinative of unfitness.
(footnote: 1)  However, even if the entire post-

adjudication period is considered here, the facts warrant a finding of unfitness.

A parent does not have an unlimited period of time in which to make reasonable efforts or progress toward regaining custody of their children.  
In re D.J.
, 262 Ill. App. 3d 584, 591, 634 N.E.2d 1306 (1994).   For over four years after the adjudication of neglect, Arthur failed to make 
any
 efforts or progress--

reasonable or otherwise.  While his recent efforts are laudable, we agree with the Public Guardian that they are simply "too little, too late."    

Finally, reversal is also warranted under the last ground alleged by the State, 
i.e.
,
 that Arthur evidenced his intent to forgo his parental rights by failing, for a period of 12 months, to communicate with the agency and/or to maintain contact with or plan for Grant's future.  750 ILCS 50/1(D)(n) (West 1994).  Arthur failed to contact the Department of Children and Family Services, Grant's legal guardian, or the agency handling Grant's case, for five years.  The trial court erroneously focused on the 12-month period immediately prior to the hearing.

Based on the foregoing, we reverse the order of the circuit court and remand this matter for entry of an order finding Arthur unfit.  This cause is further remanded for a hearing to determine whether the termination of Arthur's parental rights and appointment of a guardian with authority to consent to adoption would be in the best interests of Grant.

Reversed and remanded.

THEIS, P.J., and HARTMAN, J., concur.

FOOTNOTES
1:
The statute has since been amended to require such efforts within nine months of the adjudication of neglect or abuse.  750 ILCS 50/1(D)(m) (West 1998).