*In re* S.S. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Nereida S., Respondent-Appellant).

First District (3rd Division)   No. 1—99—3170

Opinion filed April 25, 2001, *nunc pro tunc* December 6, 2000.

Rita A. Fry, Public Defender, of Chicago (Robert C. Drizin, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Nancy Kisicki, and Eve Reilly, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Ron Fritsch, of counsel), for guardian *ad litem*.

JUSTICE BURKE delivered the opinion of the court:

Respondent Nereida S. appeals from an order of the circuit court of Cook County terminating her parental rights with respect to her three minor children, S.S., N.S. and Y.S., and appointing a guardian with the power to consent to their adoption. Respondent contends that the trial court's decision was an abuse of discretion because she was never told that her continued contact with her husband, Francisco S., who was the father of the three minors, would result in the permanent loss of custody of her children, and she never received adequate services in sign language.

On June 11, 1997, the three minor children were adjudicated wards of the court based on the finding that they had been sexually abused by their father and were at substantial risk of physical injury. On May 12, 1998, the State filed a petition for appointment of a guardian with the right to consent to adoption.

The record establishes that respondent and her husband Francisco S. were both deaf and spoke through sign language. Their three children's birth dates are as follows: S.S. on March 3, 1986; Y.S. on September 26, 1989; and N.S. on April 3, 1991.

Respondent also had three children from a prior marriage to Wenceslao L., who was sentenced to 37 years' imprisonment for physically and sexually abusing respondent and their three children during a seven-year period. The three children from that marriage are Tracy L., born in 1976, Daisy L., born in 1977, and Jessica L., born in 1981. Daisy was appointed the foster parent to the three children in the instant case.

On August 12, 1999, at a hearing on the termination of parental rights, Daisy testified that in December 1994, after she learned that Francisco S. was sexually molesting S.S., N.S. and Y.S. with respondent's knowledge, she called the police, who came and removed Francisco S. from the home. However, because he subsequently attempted to gain entry to the home on a number of occasions, in January 1995 Daisy and respondent visited the circuit court, where they obtained the forms necessary to obtain an order of protection. Before visiting the court, she had told respondent of the purpose of their

visit, and respondent agreed to accompany her to obtain the order of protection. In a nearby restaurant, Daisy filled out the forms for respondent, who was illiterate, using the information that respondent gave her. She explained to respondent the general nature of the forms, instead of translating each line, and then assured herself that respondent understood and agreed with the information in the forms before respondent signed them. Daisy and respondent then returned to the circuit court, where they appeared before a judge. After the judge asked Daisy to swear that she would accurately translate from sign language to English and from English to sign language, he instructed her to ask respondent whether everything in the forms was true. When respondent answered that the forms were true, the court entered an order of protection barring Francisco S. from entering respondent's home.

A short time later, respondent violated the order of protection by allowing Francisco S. into her home. The following month, respondent fled with him and their three children to Puerto Rico. After a caseworker located the children, a juvenile arrest warrant was issued. In June 1995, the children were returned to Illinois. Daisy became their foster mother and the trial court issued a no-contact order barring respondent and Francisco S. from seeing the children.

Jessica L. testified that she lived with respondent and Francisco S. from the time that she was 3 years old until she was 14. During the entire 11 years, Francisco S. sexually molested her several times each month. When she was seven years old, respondent walked into a room where Francisco S. was in the process of touching Jessica's vagina. When respondent started to scream, Francisco S. hit himself with a hammer and threatened to kill himself. The following year, respondent again walked into a room where Francisco S. was sexually molesting Jessica and screamed. Francisco S. began to bang his head against the wall. After these two incidents, respondent continued to live with Francisco S. Although she became more vigilant over Jessica, she also continued to leave Jessica alone with Francisco S. In December 1994, Daisy took Jessica and the other children to Columbus Hospital to be evaluated for sexual abuse. Several months later, Jessica came home from school only to discover that respondent had clandestinely moved out of the apartment, taking S.S., N.S. and Y.S. with her. Jessica remained in the apartment for several days hoping that respondent would return. When respondent failed to come home, Jessica moved in with her sister Daisy. Jessica later learned that respondent had moved to Puerto Rico with Francisco S.

Salvador Perez, a case manager for Association House, testified that he was assigned to respondent's case from March 1997 until June 1999. During that entire time, respondent and Francisco S. continued

to live together and neither ever admitted that Francisco S. had sexually molested the children. A language interpreter and a relay gesture interpreter were always present at the administrative case reviews, which occurred every six months. The reviews would not proceed in the absence of such interpreters.

Perez testified that respondent received individual counseling in American sign language at Mt. Sinai Mental Health Center. In March 1998, the counseling was terminated because respondent would not acknowledge that Francisco S. had sexually molested the children. Respondent never told Perez that she could not understand her therapist. As of June 1999, respondent had not completed the therapy that she needed in order to be reunited with her children. Association House attempted to find other services for respondent, such as parenting classes, but none could accommodate her need for an interpreter. Perez never told respondent that she had to separate herself from Francisco S. in order to regain custody of her children.

Clinical psychologist Dr. Judith Kahn testified that she specialized in hearing-impaired patients. Because she could not understand respondent's sign language, which respondent had learned in Puerto Rico, she spoke to respondent through a relay interpreter who translated respondent's sign language into American sign language. Vivian Cordona, respondent's advocate, who was also deaf, was present during the examination. Dr. Kahn determined that respondent was depressed, emotionally overwhelmed and suffered from a ''horrendous'' history of abuse. She found that respondent was a passive dependent whose primary concern was her own safety and economic welfare and that Francisco S. gave her security. The psychologist recommended extensive psychotherapy and that respondent be evaluated for antidepressive medication.

At the conclusion of the testimony, the trial court found that both respondent and Francisco S. had been proven unfit by clear and convincing evidence. Specifically, respondent was found unfit based on her failure to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare, failure to protect the children from injurious conditions within their environment, and failure to make reasonable efforts to correct the conditions that were the basis for removal of the children. Francisco S. was found unfit based on his failure to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare, based on his depravity, and based on his failure to make reasonable efforts to correct the conditions that were the basis for removal of the children. The court noted that although the case involved an extremely substantial communication problem, respondent and Francisco S. exhibited no cognitive difficulties and presented themselves very well in court. The court stated

that despite the complexities of communicating with respondent and Francisco S., communication during the hearing was readily accomplished and the court believed that they both clearly understood the proceedings. The court then found that, based on the clear and convincing testimony of respondent's daughter Jessica L., Francisco S. was a pedophile. The court further found that respondent was aware of his depravity, having sworn to it in another court proceeding, yet she consistently failed to protect her children from his harmful conduct. The court found most significant respondent's flight from the country with Francisco S. and their three children after she had obtained a court order preventing any contact between him and them. The court also found that a transcript from a prior court case was significant because it indicated that respondent testified that her first husband had sexually abused her and her children daily for seven years, but she did nothing until one of the children was so battered that she had to be hospitalized. It was only then that hospital personnel discovered that the child had also been sexually abused. The court noted that respondent's first marriage had ended only because her then husband was sentenced to 37 years' imprisonment. The court concluded that respondent clearly did not wish to confront issues regarding harm to her children. The court also found that the agencies involved in attempting to help respondent and Francisco S. made great efforts to have appropriate interpreters available to them. Finally, the court stated that it knew of no service that would be able to help respondent and Francisco S. reunite with their children if both parties refused to acknowledge that sexual abuse was rampant in their home.

At the hearing on the best interests of the children, caseworker Sharon Davila testified that S.S., N.S. and Y.S. were currently living with their half-sister Daisy L., who provided a safe and appropriate home for them. The children told Davila of their desire to be adopted by Daisy L. Davila highly recommended such an adoption.

Daisy L. testified that she believed that it was in the best interests of the children to be adopted by her. The children had no relationship with respondent and Francisco S. S.S. might be willing to visit respondent, but only if respondent refrained from blaming her for respondent's loss of custody of the children.

At the conclusion of the hearing, the trial court terminated the parental rights of respondent and Francisco S. and appointed D. Jean Ortega-Piron as guardian with the right to consent to adoption.

On appeal, respondent contends that the trial court's termination of her parental rights was an abuse of discretion because she was never warned that continued contact with Francisco S. would result in

her losing her children forever. Relying on *In re R.B.*, 297 Ill. App. 3d 97, 696 N.E.2d 1259 (1998), she asserts that the trial court's order must be reversed because she was never specifically warned by the court that her continued residence with Francisco S., the alleged "cause of the injurious environment," would result in the termination of her parental rights. She contends that, according to *R.B.*, a similar warning from a social worker or therapist was insufficient.

■ Section 1(D)(m) of the Adoption Act provides that a person shall be deemed unfit to have a child if he fails "to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent, or to make reasonable progress toward the return of the child to the parent within 9 months after an adjudication of neglected or abused minor." 750 ILCS 1(D)(m) (West 1996).

■ In *In re Grant M.*, 307 Ill. App. 3d 865, 719 N.E.2d 195 (1999), this court summarized the applicable law, stating:

"In a proceeding to terminate parental rights, the State must prove by clear and convincing evidence that the nonconsenting parent is 'unfit,' as defined under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1994)). [Citations.] A finding of unfitness may be based on evidence sufficient to support any one statutory ground, even if the evidence is insufficient to support other grounds alleged. [Citation.]

Because the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of the reviewing court, a trial court's finding of unfitness, or its finding that the State failed to meet its burden to prove unfitness, is accorded great deference and will only be reversed on review if it is against the manifest weight of the evidence. [Citations.] A decision is against the manifest weight of the evidence where the opposite result is clearly the proper result." *Grant M.*, 307 Ill. App. 3d at 868.

In *In re D.L.*, 191 Ill. 2d 1, 727 N.E.2d 990 (2000), the supreme court held that in order to determine whether a parent is unfit under section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1996)), the clear and unambiguous language of the statute mandates that the evidence must be limited to the parent's conduct within the 12-month period immediately following the adjudication of neglect.[1]

Here, the three minor children were adjudicated wards of the court on June 11, 1997, specifically because they were abused by their father Francisco S. and were at substantial risk of physical injury. From that date until the termination of parental rights hearing on

---

[1]The statute has since been amended to require such efforts within nine months of the adjudication of neglect or abuse. 750 ILCS 50/1(D)(m) (West 1998).

August 12, 1999, respondent continued to reside with Francisco S. and, despite counseling, respondent never admitted that he had sexually molested the children. Nor did she make any effort to correct the conditions that led to the removal of her children. In fact, counseling was terminated by the therapist because of respondent's refusal to acknowledge that Francisco S. had sexually abused her children. The record shows that although respondent knew that Francisco S. was sexually molesting the children, she remained with him and allowed him access to the children. She even defied the court's order of protection by taking the children to Puerto Rico, where Francisco S. presumably had unlimited access to them.

▪ Although respondent was never specifically told by the trial court that she had to choose between living with her husband and living with her children, as was the case in *R.B.*, we find little similarity between the two cases. In *R.B.*, both parents were substance abusers who neglected their children by failing to provide necessary care, such as food and immunizations for the children, thereby creating an environment injurious to their welfare. *R.B.*, 297 Ill. App. 3d at 98. The court found that the mother could not have known that after she became drug-free and cooperated with counseling and other services she would have her parental rights terminated merely because she remained with her husband. *R.B.*, 297 Ill. App. 3d at 101. Here, unlike *R.B.*, respondent knew that Francisco S. was a pedophile, had observed him molest their children, and knew that the children were at risk at all times that he was present in the home. Also, unlike *R.B.*, respondent personally obtained an order of protection against Francisco S. to keep him away from the home and the children based on his sexual abuse of the children. Accordingly, we find that, under the circumstances, *R.B.* is not applicable here because respondent fully knew that remaining with Francisco S. would prevent her from ever regaining custody of her children and that her parental rights would ultimately be terminated if she did not separate from him.

▪ Respondent next contends that the Department of Children and Family Services (DCFS) never advised her what was required of her in order to regain custody of her children. She asserts that DCFS did not expend reasonable efforts to provide "family preservation" services to prevent the removal of the children from the home. She argues that when her counselor at Mt. Sinai Mental Health Center terminated services, DCFS did not refer her to another counselor. She also asserts that the trial court erred in excluding testimony by an expert witness regarding whether services were available for her with her complex communications problems. She further argues that DCFS prevented her from making reasonable progress toward regaining custody of her children.

Respondent's caseworker, Salvador Perez, testified that although it was not possible to obtain parenting classes for respondent because of her complex language difficulties, she did receive individual counseling in American sign language at Mt. Sinai Mental Health Center. Respondent never complained to him that she could not understand her therapist, and counseling was only terminated in March 1998 because she refused to acknowledge that Francisco S. had ever sexually abused the children.

Although respondent wishes to place the entire blame for her lack of progress on DCFS, her stubborn refusal to admit the very cause of her children's problems demonstrated that she was not amenable to therapy or counseling. Respondent has failed to establish that under these impracticable circumstances DCFS was required to refer her to additional counselors or therapists.

Accordingly, we find that the trial court properly determined that respondent was proven unfit by clear and convincing evidence.

For the reasons stated, the order of the circuit court of Cook County is affirmed.

Affirmed.

HALL, P.J., and CERDA, J., concur.