NOTICE
Decision filed 01/12/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250673-U

NO. 5-25-0673

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* L.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21-JA-41 |
| | ) | |
| Tichina M., | ) | Honorable |
| | ) | Thomas M. O'Shaughnessy, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Boie and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's judgment terminating respondent's parental rights was not against the manifest weight of the evidence where the State met its burden of proving that respondent was unfit to parent and that termination was in the best interest of the minor. Therefore, the judgment of the circuit court is affirmed.

¶ 2    The respondent, Tichina M. (Mother),[1] appeals the Vermilion County circuit court's August 21, 2025, judgment terminating her parental rights over her minor child, L.H. On appeal, Mother challenges both the finding of unfitness and the determination that it was in the minor's best interests to terminate her parental rights. For the reasons explained below, we affirm.

_____

[1]L.H.'s father was a party to 21-JA-41 but is not a party to this appeal. His parental rights were terminated on August 21, 2025.

1

¶ 3                                    I. BACKGROUND

¶ 4     The State filed a petition for adjudication of wardship on May 7, 2021, on behalf of L.H., who was born in late July 2018, due to allegations of abuse. The petition alleged L.H. was abused under section 2-3(2)(ii) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(2)(ii) (West 2020)) as a minor who was

> "under 18 years of age, and whose parent, or immediate family member, or any person responsible for the minor's welfare, or any person who is in the same family or household as the minor, or any individual residing in the same home as the minor, or a paramour of the minor's parent, creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss of impairment of any bodily function."

¶ 5     A shelter care hearing was held the same day. Department of Children and Family Services (DCFS) investigator Sarah Sieberns testified that she received a hotline call concerning L.H. on April 29, 2021. L.H. was taken to the hospital following a reported fall from a stroller while in the care of Mother's paramour, Kuiana Like. Dr. Petrak, a child-abuse specialist at Peoria Children's Hospital, observed multiple injuries on different areas of L.H.'s body. An MRI revealed both new and old head trauma, and the only injury consistent with a fall was a bruise on the child's forehead. Neither Mother nor the paramour provided an explanation for the various injuries. The circuit court found probable cause for the filing of the petition, granted temporary custody to DCFS, and entered a temporary custody order that day, with visitation left to DCFS's discretion.

¶ 6     On August 27, 2021, the circuit court entered an adjudication order finding the minor was at substantial risk of physical abuse as defined by section 2-3(2)(ii) of the Juvenile Court Act of 1987 (*id.*). The order stated that the abuse was not inflicted by a parent or guardian, but by Mother's paramour. Mother admitted to the allegation of abuse contained in the petition.

¶ 7     On October 22, 2021, DCFS filed a dispositional report. The report summarized the April 29, 2021, incident in which the minor child sustained head injuries, including two subdural

2

hematomas indicative of abusive head trauma. The report further noted that DCFS took protective custody of L.H. on May 6, 2021. At the time of the report, Mother remained in contact with DCFS, was unemployed, was attending parenting classes, and had completed a mental health assessment and a domestic violence program. Mother was afforded weekly visitation and had missed two visits. The report also indicated that Mother had two pending misdemeanor charges for domestic battery and disorderly conduct.

¶ 8    On October 27, 2021, the circuit court held a dispositional hearing. The State asked that Mother be found unfit and unable to parent L.H. based on her need to complete services necessary for reunification, including a domestic violence course. The State noted that Mother had completed anger management and parenting education courses and had demonstrated stability. The circuit court, after considering the dispositional report and the State's recommendation, found Mother unfit. The circuit court noted that Mother would be required to complete further intact services, such as parenting education, domestic violence, anger management, and show evidence of stability. A written dispositional order was entered on October 29, 2021.

¶ 9    Lutheran Social Services of Illinois (LSSI) filed a permanency report on January 5, 2022. Mother was employed, had her own residence, attended parenting classes, completed a mental health assessment, completed a domestic violence program, and was participating in anger management classes.

¶ 10    An additional permanency report was filed on March 28, 2022. Mother completed parenting classes, was referred for a substance abuse assessment, and completed domestic violence classes. Mother was arrested on February 25, 2022, for theft and on March 2, 2022, for domestic battery and was incarcerated for domestic battery. The report stated that visitation was

3

discontinued and that Mother would need to complete additional services due to the domestic battery charge.

¶ 11    On March 30, 2022, the circuit court held a permanency hearing. All parties stipulated to the report filed on the same day; the State recommended a finding of unfitness as neither reasonable efforts nor reasonable progress had been made. The circuit court found that, due to a lack of reasonable efforts and progress, Mother was still unfit.

¶ 12    LSSI filed a permanency report on June 24, 2022. The report stated that Mother was released from jail on April 18, 2022, and rearrested on May 12, 2022, for violations of a bond order. Mother was then released from jail again on June 8, 2022, and continued to be in contact with LSSI. Further, Mother was on a waiting list for housing and was staying at a motel in Danville, Illinois. Mother had missed several visits with L.H. due to her incarceration and other obstacles, such as training for work.

¶ 13    On June 29, 2022, the circuit court held a permanency hearing. The State began by calling Ashley Danner, the current LSSI caseworker. Danner testified that she met with Mother immediately after Mother was released from custody and reengaged in services. Danner further stated that visits with the child went very well. The circuit court entered a permanency order on June 30, 2022.

¶ 14    From September 2022 through February 2025, the circuit court conducted periodic permanency reviews reflecting ongoing instability and inconsistent engagement in services. In September and October 2022, permanency reports documented Mother's lack of stable housing, multiple arrests, including a probation violation and later aggravated assault with a deadly weapon, incarceration that interrupted services, and inconsistent visitation due to Mother being in police custody, although she maintained contact with her caseworker.

4

¶ 15    On November 3, 2022, the circuit court held a permanency hearing. The circuit court found that Mother had not made reasonable efforts or reasonable and substantial progress. An LSSI caseworker testified to Mother's previous arrests and instability, as well as Mother's inconsistency in cooperation with the service plan. Mother then testified on her own behalf. Mother testified to the status of her criminal charges, and the circuit court found that Mother must be released from custody and reengage in services, including a substance abuse assessment and any following treatment recommendations.

¶ 16    On November 29, 2022, a petition to terminate parental rights was filed. The petition alleged that mother had not maintained a reasonable degree of interest, concern, or responsibility for her child; deserted the child for more than three months preceding the commencement of the action; failed to maintain reasonable efforts in her case in the relevant nine-month period of February 28, 2022, to November 28, 2022; and failed to maintain reasonable and substantial progress in her case in the relevant nine-month period. The State later withdrew this petition on October 12, 2023.

¶ 17    On December 11, 2023, a permanency report was filed. The report stated that Mother had maintained regular contact with LSSI, had two jobs, was on probation, was on a wait list for parenting classes, completed an intake for mental health services, attended substance abuse classes, completed a domestic violence program, was being referred for anger management, and was trying to get visits set up.

¶ 18    On December 15, 2023, a permanency order was filed that found Mother had made reasonable efforts and reasonable and substantial progress. By March 2024, however, the court found that she was no longer making reasonable efforts or progress.

¶ 19    Permanency reports for May 2024 to August 2024 reflected continued housing instability, partial participation in services, and periods of noncompliance. The November 13, 2024, report reflected missed visits, an arrest for domestic battery, and a mental health assessment that did not result in recommended treatment. On January 10, 2025, visitation was temporarily suspended due to non-visits and incarceration. By February 24, 2025, Mother had relocated to Chicago.

¶ 20    On April 11, 2025, the State filed a petition to terminate Mother's parental rights. The petition alleged that mother had not maintained a reasonable degree of interest, concern, or responsibility for her child; deserted the child for more than three months preceding the commencement of the action; failed to maintain reasonable efforts in her case in the relevant nine-month period of May 24, 2024, to February 24, 2025; and failed to maintain reasonable and substantial progress in her case in the relevant nine-month period.

¶ 21    On August 20, 2025, the circuit court held a fitness hearing on the petition to terminate parental rights. An LSSI caseworker, Jamie Bann, appeared on behalf of the State and explained that Mother had completed a parenting course and made some efforts to participate in other services, but had not alleviated the concerns that necessitated those services. Although a mental health assessment concluded that Mother did not require additional services, Bann believed further mental health courses were necessary. Mother's visitation with the minor child was described as sporadic, and despite being offered weekly visits, she had not visited the child since September 2024. Mother's overall cooperation with recommended services was characterized as very poor, and Bann indicated that she was never comfortable recommending a return home. Bann further indicated that Mother continued to remain involved with the minor's abuser, a circumstance that remained concerning in light of the reasons for the child's removal. Bann also noted that, at the time of the termination hearing, Mother had been charged with attempted murder. Despite periods

6

of engagement and apparent stability, Bann did not believe the child could be returned to Mother within a reasonable period of time.

¶ 22 At the conclusion of the hearing, the circuit court found that Mother's efforts over the life of the case did not demonstrate a reasonable degree of interest, concern, or responsibility for the child's welfare. The court acknowledged that Mother demonstrated some interest, concern, and responsibility at various times but found that her efforts were never objectively reasonable and that she failed to make the child a priority in her life. The court further found that Mother failed to make reasonable progress and failed to make reasonable efforts to correct the conditions that led to the child's removal. Accordingly, the court found Mother to be an unfit parent.

¶ 23 The circuit court immediately proceeded to a best-interest hearing. Bann again testified that L.H. was well bonded to her foster family, with whom she had been placed throughout the case, and that the foster home was the best placement for the child. Bann further testified that Mother had not contacted the foster parents for approximately six months. On cross-examination, Bann acknowledged that the foster family had previously given notice of an intent to stop fostering but later withdrew that notice.

¶ 24 The circuit court found by a preponderance of the evidence that termination of Mother's parental rights was in L.H.'s best interest. In reaching its decision, the court considered L.H.'s physical safety and welfare, the development of her identity, her bonds and attachments, and the environment in which she felt loved and valued.

¶ 25 On August 21, 2025, the circuit court entered a finding of parental unfitness and a dispositional order terminating Mother's parental rights as to L.H. Mother timely appealed.

7

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, Mother challenges the finding of unfitness and termination of her parental rights. Although Mother references multiple statutory grounds for termination, her brief does not develop a substantive argument as to each ground. Instead, Mother largely recites the services in which she participated and asserts that the circuit court erred in finding her unfit. In response, the State asserts that the circuit court properly found Mother unfit as she failed to fully engage in the services provided to her, nor did she correct the conditions which led to the child's removal, and that she had not met the standards of reasonable progress or efforts. We agree with the State. Because Mother failed to fully engage with the services provided to her, ultimately failed to complete the service plan in the relevant nine-month period, and failed to correct the conditions that led to her child's removal, Mother was properly found unfit.

¶ 28    Termination of parental rights proceedings are governed by the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2024)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2024)). *In re D.T.*, 212 Ill. 2d 347, 352 (2004). A petition to terminate parental rights is filed under section 2-29 of the Juvenile Court Act, which delineates a two-step process to terminate parental rights involuntarily. 705 ILCS 405/2-29(2) (West 2024). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). 705 ILCS 405/2-29(2), (4) (West 2024); *In re J.L.*, 236 Ill. 2d 329, 337 (2010). If the court finds the parent unfit, the matter proceeds to a second hearing at which the State must prove that termination of parental rights is in the child's best interests. 705 ILCS 405/2-29(2) (West 2024); *D.T.*, 212 Ill. 2d at 352. Accordingly, we turn to the circuit court's finding that Mother was unfit.

8

¶ 29    Our courts have recognized that parental rights and responsibilities are of deep importance and should not be terminated lightly. *Id.* at 364. Thus, parental rights may be terminated only after a finding of unfitness that is supported by clear and convincing evidence. *Id.* A finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *Id.* The circuit court's finding of unfitness is given great deference because it has the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). This court, therefore, does not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001). Each case concerning parental fitness is unique and must be decided on the particular facts and circumstances presented. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). In addition, because each of the statutory grounds of unfitness is independent, the circuit court's finding may be affirmed where the evidence supports a finding of unfitness as to any one of the alleged grounds. *In re C.W.*, 199 Ill. 2d 198, 217 (2002).

¶ 30    Section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2024)) contains two separate grounds, either of which may uphold a finding of unfitness. Subsection (i) deals with a parent's failure to make reasonable efforts to correct the conditions that were the basis for the removal of the child, and subsection (ii) deals with a parent's failure to make reasonable progress toward the return of the child during any nine-month period following the adjudication of the child as neglected or abused. *Id.* A parent's failure to substantially fulfill their obligations under a service plan and correct the conditions that brought the child into care is considered failure to make reasonable progress toward the return of the child to the parent. *Id.* Here, the circuit court found

9

Mother unfit based on her failure to make reasonable progress toward the return of L.H. during the nine-month period of May 24, 2024, to February 24, 2025.

¶ 31    Reasonable progress is judged by an objective standard based on the amount of progress measured from the conditions existing at the time custody was taken from the parent. *Daphnie E.*, 368 Ill. App. 3d at 1067. At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification, and reasonable progress exists when the circuit court can conclude that it will be able to order the child returned to parental custody in the near future. However, a parent does not have an unlimited amount of time to make reasonable efforts or progress toward the return home of her children. *In re Grant M.*, 307 Ill. App. 3d 865, 871 (1999).

¶ 32    Here, the evidence presented at the fitness hearing supported the circuit court's finding that Mother failed to make reasonable progress or reasonable efforts during the relevant nine-month period. Mother argues that termination was improper because she participated in or completed certain services, including parenting classes and domestic violence programming, completed a substance abuse assessment, maintained employment, had housing, and her visits with L.H. went very well. She further contends that her inconsistent visitation resulted from periods of incarceration and that she nevertheless maintained contact with LSSI.

¶ 33    However, the record reflects that Mother's efforts and progress were inconsistent and short-term. Although Mother completed some services, she was repeatedly re-referred due to continued criminal involvement and instability, and her communication with caseworkers was sporadic. While the circuit court initially found reasonable efforts and progress, that finding was not sustained. At the unfitness hearing, caseworker Bann testified that, despite Mother's intermittent engagement, she did not believe the child could be returned home in the near future. Viewed as a

whole, the evidence supported the circuit court's determination that Mother made neither reasonable efforts nor reasonable progress toward reunification.

¶ 34 Once the court makes a finding of unfitness, "[t]he issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. The parent's interest in maintaining the parent-child relationship "must yield to the child's interest in a stable, loving home life." *Id.* At this stage of the termination proceedings, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 31.

¶ 35 In making a best-interest determination, the court must consider, within the context of the child's age and developmental needs, the following factors:

> " '(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child.' " *Id.* ¶ 32 (quoting *Daphnie E.*, 368 Ill. App. 3d at 1072).

See also 705 ILCS 405/1-3(4.05) (West 2024).

¶ 36 As with the circuit court's findings at the unfitness stage, we afford the court great deference, as it is in a superior position to view the witnesses, assess their credibility, and weigh conflicting evidence. *J.B.*, 2019 IL App (4th) 190537, ¶ 33. We will not reverse the circuit court's best-interest determination unless it is against the manifest weight of the evidence. *Id.*

¶ 37 Applying these principles, we conclude that the circuit court's determination that termination of Mother's parental rights was in the minor's best interest and was not against the

11

manifest weight of the evidence. The record demonstrates that the court considered relevant statutory factors in light of the child's age and developmental needs, including the child's need for safety, stability, and permanence. The court was entitled to give significant weight to the child's need for a stable and consistent home environment and to conclude that this need outweighed Mother's interest in maintaining the parent-child relationship. Where, as here, the evidence supports the court's finding that termination would further the child's best interests, we will not substitute our judgment for that of the circuit court.

¶ 38   Because we must affirm the circuit court's finding of unfitness if the evidence supports any one of the statutory grounds alleged, including a failure to make reasonable efforts or reasonable progress during the relevant nine-month period following the adjudication of neglect (see *C.W.*, 199 Ill. 2d at 217), we conclude that the circuit court's determination was not against the manifest weight of the evidence. After reviewing the record, we cannot say that an opposite conclusion is clearly apparent. Accordingly, we affirm the circuit court's findings that Mother failed to make reasonable efforts and reasonable progress toward the return of the child, and that termination of parental rights was in the child's best interests.

¶ 39                                III. CONCLUSION

¶ 40   For the foregoing reasons, the August 21, 2025, judgment of the circuit court finding Mother unfit and terminating her parental rights is affirmed.


¶ 41   Affirmed.