NOTICE
Decision filed 01/20/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250704-U

NO. 5-25-0704

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* JAZMYN S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois. | ) | Clark County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23-JA-1 |
| | ) | |
| Skylier M., | ) | Honorable |
| | ) | Tracy W. Resch, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice Cates and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's judgment terminating respondent's parental rights was not against the manifest weight of the evidence where the State met its burden of proving that respondent was unfit to parent. Therefore, the judgment of the circuit court is affirmed.

¶ 2    The respondent, Skylier M. (Mother),[1] appeals the circuit court of Clark County's August 8, 2025, judgment terminating her parental rights over her minor child, Jazmyn S. For the reasons explained below, we affirm.

---

[1]Jazmyn S.'s father was a party to 23-JA-1 but is not a party on appeal. His parental rights were terminated on May 6, 2024.

1

¶ 3                                    I. BACKGROUND

¶ 4     This case began with the filing of a petition for adjudication of wardship on January 4, 2023, on behalf of Jazmyn S. who was born in mid-December 2017. The petition was filed due to allegations of neglect, abuse, or dependency on the grounds that (1) her sibling was already under the care of the Department of Children and Family Services (DCFS); (2) the respondent had failed to participate in services offered by DCFS; (3) Jazmyn S. had been a witness to physical abuse in her home; and (4) Jazmyn S. was living in a home under the supervision of individuals who were under the influence of controlled substances.

¶ 5     A motion for temporary custody was filed on the same day. The motion stated the same grounds for custody as the petition for adjudication of wardship. Protective custody of Jazmyn S. was taken on January 3, 2023.

¶ 6     On January 5, 2023, a shelter care hearing took place. DCFS caseworker, Jillian Callaway, testified for the State. Callaway stated that the minor lived with her mother, grandmother, Michelle H., and great-grandmother, Estella E. Her three-year-old brother, Carson S., was taken into DCFS custody in August 2022. Carson S. was removed due to multiple indicated reports of lack of supervision, as well as no progress in Mother's intact case. Jazmyn S. was not taken into custody with Carson S. as she was residing with her maternal grandmother, Michelle, at the time.

¶ 7     Callaway testified that on January 2, 2023, she was contacted by the Casey Police Department (CPD) due to a domestic violence dispute between Mother and Michelle involving methamphetamine found in the home. The CPD also believed that Mother was under the influence.

¶ 8     Callaway testified that she interviewed Michelle, who stated that she had observed Mother with methamphetamine, and when she confronted Mother about it, Mother responded aggressively. Mother proceeded to jump on Michelle's back, shove her, and punch her. Michelle

2

stated to Callaway that Mother had been under the influence in the presence of Jazmyn S. at various times. Callaway reported that, when she spoke with Michelle, Michelle appeared to be under the influence. When drug tested, Michelle tested positive for methamphetamines.

¶ 9     Callaway interviewed Jazmyn S. The minor stated that she had observed physical altercations between Mother, Estella, Michelle, and Michelle's boyfriend. Further, the minor stated she had observed Mother using drugs.

¶ 10    Mother was interviewed next. Mother admitted to the January 2, 2023, altercation with Michelle. She stated that she, Michelle, and Estella were using methamphetamine in the home with Jazmyn S. present. Mother stated that she did not want the minor living in the home with Michelle.

¶ 11    Callaway testified regarding the DCFS case involving Mother's other minor child, stating that Mother tested positive for methamphetamines on November 11, 2022, and failed to appear for a scheduled drug screening on November 15, 2022. Callaway concluded her testimony by stating that immediate protective custody of Jazmyn S. was necessary. The circuit court thereafter found that an urgent and immediate need existed to place Jazmyn S. in shelter care for her protection.

¶ 12    On February 23, 2023, an adjudicatory hearing took place. Callaway testified for the State and repeated the facts presented at the shelter care hearing on January 5, 2023. Ian Kasemeyer, a patrolman with the City of Casey, Illinois, testified for the State next. He testified that on January 2, 2023, he was called to Mother's address. Upon arrival, Kasemeyer spoke to Mother, who advised him that she was attempting to stop her mother's departure from the home when Michelle reached back and punched her in the head. Michelle was not present at the home at the time of Kasemeyer's arrival. Mother stated that Michelle and her boyfriend had left the home to pick up methamphetamine.

¶ 13    Michelle then testified for the State. She stated that on January 2, 2023, Estella came and alerted her that Mother was in the bathroom "pounding on something." Michelle opened the door and found Mother with a baggy of what she believed to be methamphetamine. When Michelle attempted to retrieve the bag from Mother, a physical altercation began. This altercation took place inside the home, then in the garage, where Michelle hit her face on a dog cage. Jazmyn S. was present in the home during these events. She then testified that she was unaware if anyone in the home was using drugs but believes Estella may have been using drugs as well. On cross-examination, she stated she had not been using drugs, on January 2, 2023, but that she was unknowingly under the influence of methamphetamine as Mother had placed methamphetamine in her drink.

¶ 14    The circuit court found that Jazmyn S. was neglected, abused, or dependent pursuant to sections 2-3 and 2-4 of the Juvenile Court Act of 1987 (705 ILCS 405/2-3, 2-4 (West 2022)). The order of adjudication was filed on March 6, 2023.

¶ 15    On March 22, 2023, a dispositional report was filed by DCFS. The report detailed the events of January 2, 2023, and Mother's other open intact case. The report noted that Jazmyn S. required extensive dental treatment for a severe infection and that the foster family paid for necessary procedures. The report recommended that wardship and custody remain with DCFS.

¶ 16    As for visitation, Mother was given one hour, once a week, of supervised visitation. The visits with the minor reportedly went well; however, Mother was told to stop bringing candy for Jazmyn due to the severe nature of her dental procedure. Mother was provided a copy of her service plan which required her to complete a substance abuse assessment, mental health evaluation with a domestic violence component, parenting education, randomized drug testing, maintain employment, and maintain stable housing. DCFS then recommended that Jazmyn S. be found to

4

be a ward of the court, with guardianship and custody be given to DCFS, that Mother be required to fully cooperate with DCFS, and that a permanency hearing be set within six months.

¶ 17   On April 6, 2023, a dispositional hearing was held by the circuit court. Mother testified on her own behalf. Mother testified that since the last court hearing, in January, she had taken a parenting class, started substance abuse courses, was on a waiting list for mental health counseling, was employed, had regularly attended her visits with Jazmyn S., and had passed a drug screening.

¶ 18   On cross-examination, Mother stated that she no longer lived with Michelle and Estella but lived with her sister. Mother then stated that she believed the minor should be immediately returned to her care. The circuit court found it was in the best interest of the minor that she be adjudicated as a neglected, abused dependent. The circuit court found that while Mother had taken some steps, she had not completed critical components of her service plan.

¶ 19   On September 12, 2023, DCFS filed a family service plan report. The report indicated that Mother had made little to no progress toward the minor's return. Mother had moved from her sister's residence into an apartment shared with two men whom she did not want around either of her children, and was considered homeless. At that time, Mother was not engaged in services, failed to appear for a drug screening, had tested positive for methamphetamine on November 3, 2022, and had been incarcerated multiple times. The report further noted that Mother had not visited Jazmyn S. since May 2023. An Illinois Law Enforcement Agencies Data System (LEADS) check revealed that Mother had a Class 4 felony conviction for unlawful possession of a credit card and had been sentenced to 12 months' probation in Coles County, Illinois.

¶ 20   On October 17, 2023, DCFS filed an addendum report. The report stated that Mother missed a scheduled visit on October 16, 2023, due to her failure to confirm the visit with DCFS within 24 hours. Mother's drug screening on September 22, 2023, was negative for all substances.

Despite this result, the report concluded that Mother had made little progress and that her visits with Jazmyn S. remained inconsistent.

¶ 21    On October 23, 2023, the circuit court conducted a permanency hearing. The parties stipulated to the factual contents of the DCFS reports dated September 26, 2023, and October 17, 2023. Mother argued that she had made reasonable and substantial efforts based on her housing, employment, participation in treatment, and a negative drug screen. The State and the guardian *ad litem* asserted that her efforts were insufficient due to missed drug screens, lack of engagement in domestic violence and parenting services, and ongoing cooperation issues. The circuit court found that Mother had made some progress, but not reasonable and substantial progress toward reunification, adopted DCFS's recommendation, and set the permanency goal as return home within 12 months.

¶ 22    On February 28, 2025, the State filed a motion to terminate parental rights. The motion alleged Mother failed to maintain a reasonable degree of interest, concern, or responsibility and failed to make reasonable progress during the nine-month periods of July 21, 2023, to April 21, 2024, and April 22, 2024, to January 22, 2025.

¶ 23    On March 22, 2024, DCFS filed a family service plan report. The plan detailed that Mother had moved several times, including into a home with her mother, whom she has an order of protection against, and has failed to timely update DCFS of her new address. Further, Mother was unemployed at the time of the report. Mother was still required to complete a substance and mental health assessment, parenting courses, and cooperate with DCFS. Lastly, the report stated that Mother had been ending visits early and visits had been inconsistent.

¶ 24    On June 2, 2025, DCFS filed a permanency report. The report stated that Mother had no contact with DCFS since August 2024 and that no apparent progress has been made on her service

6

plan. Substitute care pending termination of parental rights was recommended due to Mother's lack of cooperation with DCFS and her lack of reasonable progress and efforts.

¶ 25    On June 26, 2025, a fitness hearing was held. Mother's counsel was present, but Mother failed to appear; she had not appeared at a hearing since May 2, 2024. DCFS child welfare specialist Marissa Alexander testified that Mother had not visited Jazmyn S. since April 2024, had not contacted DCFS since August 2024, has visited the minor five times in the past year, had moved out of state, blocked DCFS contact, and failed to complete her service plan. Alexander testified that Mother's parental rights to Jazmyn S.'s sibling had been terminated, and the minor has been adopted by the same foster care placement as Jazmyn S. As for Mother's DCFS service plan, she completed the mental health course and partly completed the substance abuse courses. Alexander had not been able to contact Mother, reporting that Mother had blocked her phone number and the letters sent to her last known address have been returned.

¶ 26    The circuit court found that Mother failed to make reasonable progress and that the State had proven unfitness. In reaching this determination, the court relied on the length of the minor's foster care placement, Mother's lack of contact with DCFS, her failure to visit the minor during that period, her failure to complete significant components of the service plan, and her refusal to meet with DCFS to address service compliance. The circuit court did not address whether Mother maintained a reasonable degree of interest, concern, or responsibility.

¶ 27    On July 3, 2025, DCFS submitted a best-interest report. The report stated that the minor had been in foster care for 912 days, was placed in the same foster home as her biological sibling, and had developed a strong bond with her foster family. The report recommended termination of Mother's parental rights and a change in the permanency goal to adoption.

7

¶ 28    On August 7, 2025, a best-interest hearing was held. Mother's counsel was present, but Mother failed to appear. Alexander testified for the State, reiterating much of her prior testimony. She additionally stated that Mother was not in a position, presently or in the foreseeable future, to have the minor returned to her care. She testified that Jazmyn S. had remained in the same foster placement since protective custody was taken, that her biological sibling had been adopted by that placement, and that Jazmyn was bonded with the foster family and doing well.

¶ 29    Next, Emily Vahling, one of the minor's foster parents, testified for the State. She testified that she is currently married and not employed, but that her husband is employed full-time. She further testified that the minor had expressed a desire to be adopted.

¶ 30    The circuit court found that termination of Mother's parental rights was in the best interests of the minor. The court emphasized that Jazmyn had been in foster care for nearly three years, in the same stable placement, where she resided with her sibling and had developed a strong bond with the foster family. The court noted that the foster parents provided a safe and emotionally supportive environment, attended to the child's academic and social needs, and were willing to provide permanency through adoption, which the child herself desired. In contrast, Mother had made minimal progress toward reunification, disengaged from services, and failed to maintain contact with either the child or DCFS since August 2024, despite being offered weekly supervised visitation, which had been inconsistent even before contact ceased. Based on the stability and permanence of the foster placement and Mother's lack of engagement, the court concluded that termination of Mother's parental rights was in the minor's best interests. Mother timely appealed.

¶ 31                                II. ANALYSIS

¶ 32    On appeal, Mother urges this court to reverse the circuit court's finding that she is an unfit parent. Although her brief states that both the finding of parental unfitness and the determination

of the best interest of Jazmyn S. should be reversed, the brief contains argument and citations only as to unfitness; therefore, any challenge to the best-interest finding is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *People v. Duckworth*, 2024 IL App (5th) 230911, ¶¶ 7-8.

¶ 33    Mother argues that the circuit court erred in finding her unfit because the circuit court failed to give proper weight to her progress towards the return of her minor child. In response, the State asserts that the circuit court properly found Mother unfit as she failed to fully engage in the services provided to her, she did not correct the conditions which led to the child's removal, and that she had not met the standards of reasonable progress. We agree with the State. Because the evidence demonstrated that Mother failed to fully engage with the services provided to her and ultimately failed to complete the service plan in the relevant nine-month periods of July 21, 2023, to April 21, 2024, and April 22, 2024, to January 22, 2025, Mother was properly found unfit.

¶ 34    Termination of parental rights proceedings are governed by the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2022)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2022)). *In re D.T.*, 212 Ill. 2d 347, 352 (2004). A petition to terminate parental rights is filed under section 2-29 of the Juvenile Court Act, which delineates a two-step process to terminate parental rights involuntarily. 705 ILCS 405/2-29(2) (West 2022). The State must first establish, by clear and convincing evidence, that the parent is an unfit person under one or more of the grounds enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). 705 ILCS 405/2-29(2), (4) (West 2022); *In re J.L.*, 236 Ill. 2d 329, 337 (2010). If the court finds that the parent is unfit, the matter proceeds to a second hearing, at which the State must prove that termination of parental rights is in the best interests of the child. 705 ILCS 405/2-29(2) (West 2022); *D.T.*, 212 Ill. 2d at 352. Accordingly, we turn to the circuit court's finding that Mother was unfit.

9

¶ 35    Our courts have recognized that parental rights and responsibilities are of deep importance and should not be terminated lightly. *D.T.*, 212 Ill. 2d at 364. Thus, parental rights may be terminated only after a finding of unfitness that is supported by clear and convincing evidence. *Id.* A finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *Id.* The circuit court's finding of unfitness is given great deference because that court has the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). This court, therefore, does not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001). Each case concerning parental fitness is unique and must be decided on the particular facts and circumstances presented. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). In addition, because each of the statutory grounds of unfitness is independent, the circuit court's finding may be affirmed where the evidence supports a finding of unfitness as to any one of the alleged grounds. *In re C.W.*, 199 Ill. 2d 198, 217 (2002).

¶ 36    Section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2022)) contains two separate grounds, either of which may uphold a finding of unfitness. Subsection (i) deals with a parent's failure to make reasonable efforts to correct the conditions that were the basis for the removal of the child, and subsection (ii) deals with a parent's failure to make reasonable progress toward the return of the child during any nine-month period following the adjudication of the child as neglected or abused. *Id.* A parent's failure to substantially fulfill their obligations under a service plan and correct the conditions that brought the child into care is considered failure to make reasonable progress toward the return of the child to the parent. *Id.* Here, the circuit court found

10

Mother was unfit based on her failure to make reasonable progress toward the return of Jazmyn S. during the relevant nine-month periods.

¶ 37    Reasonable progress is judged by an objective standard based on the amount of progress measured from the conditions existing at the time custody was taken from the parent. *Daphnie E.*, 368 Ill. App. 3d at 1067. At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification, and reasonable progress exists when the circuit court can conclude that it will be able to order the child returned to parental custody in the near future. However, a parent does not have an unlimited amount of time to make reasonable efforts or progress toward the return home of her children. *In re Grant M.*, 307 Ill. App. 3d 865, 871 (1999).

¶ 38    Here, the evidence presented at the fitness hearing supported the circuit court's finding that Mother failed to make reasonable progress during the relevant nine-month periods. Although Mother participated in some services, obtained employment for a brief period, and attended limited visits, her efforts were inconsistent and not sustained. Mother ceased visitation, failed to comply with drug screening requirements, did not complete her service plan, disengaged from DCFS, and had no contact with the agency or the child for an extended period.

¶ 39    We must affirm if we find evidence to support the circuit court's finding that the respondent failed to make reasonable progress toward the return of the child during any nine-month period following the adjudication of neglect. See *C.W.*, 199 Ill. 2d at 217. After reviewing the record, we cannot say that an opposite conclusion is clearly apparent. We therefore find the circuit court's determination that Mother is unfit because she failed to make reasonable progress toward the return of Jazmyn S. is not against the manifest weight of the evidence and affirm its decision.

¶ 40 Lastly, we again note that Mother does not challenge the circuit court's finding that it was in the child's best interests that her parental rights be terminated, and so that finding is also affirmed. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued are forfeited).

¶ 41                                        III. CONCLUSION

¶ 42 For the foregoing reasons, the July 7, 2025, and August 8, 2025, orders of the circuit court of Clark County are affirmed.

¶ 43 Affirmed.